OPINION OF THE COURT
Thomas J. Lowery, Jr., J.
In this claim to recover damages for an alleged breach of a public work’s contract, the State moves pursuant to CPLR 3212 for an order granting summary judgment on the ground of release.
The contract was for the reconstruction of a portion of State highway Nos. 670 and 671. It contained the standard release clause.[1] After the State accepted the work, a final *205 agreement[2] was prepared and submitted to the claimant. At the time of the signing of the agreement, the claimant added a clause that purported to reserve its right to make a cláim for certain concrete overlay work. Thereafter, a final estimate was prepared based on the final agreement.[3] The estimate fixed the sums that were concededly due under the contract and did not include any sums for items in dispute. On March 30, 1981, a check for the sum of $56,523.57 was mailed to the claimant. The latter sum represented the amount concededly due, less sums previously withheld by the Comptroller pursuant to section 220-b of the Labor Law. Attached to the check was a stub identifying it as the final payment. On April 3, 1981, the check was cashed by the claimant. On June 8, 1981, the subject claim was filed with this court. No detailed and verified claim was ever served on the Department of Transportation.
The State takes the position that the release clause in the contract, and section 145 of the State Finance Law, were triggered when the claimant accepted the check, which the State asserts constituted final payment[4] under the contract. It argues that these provisions bar the commencement of an action unless the claimant serves a detailed and verified statement of claim on the Depart *206 ment of Transportation within 40 days after the mailing of final payment, and files the claim with the court and serves a copy upon the Attorney-General within six months after such time. The State contends that since the claimant failed to file the requisite claim with the Department of Transportation, this action is barred.
The claimant does not dispute that if final payment was made and accepted its claim would be barred. It is the claimant’s position, however, that the payment accepted here was not the final payment within the meaning of the contract. It alleges that the withholdings made by the Comptroller under section 220-b of the Labor Law were not authorized since they were made as a result of illegal wage rate redeterminations made by the Industrial Commissioner. Moreover, the claimant contends that, even assuming that such withholdings were authorized, the payment was not the final payment, since such payment may only be predicated on a final agreement, which did not exist here.
The claimant’s argument that the withholdings made by the Comptroller were not authorized must be rejected. First, it has now been established that withholdings under section 220-b of the Labor Law are considered deductions authorized under the contract. (Snyder Constr. Co. v State of New York, 53 NY2d 613, revg 73 AD2d 50.) Moreover, the Comptroller is directed to make such withholdings once he has been informed by the Industrial Commissioner that unpaid wages or supplements appear to be due. (Labor Law, § 220-b.) This is true, whether or not the underlying determinations of the Industrial Commissioner may ultimately be determined to be illegal or erroneous. Hence, any questions concerning the actions of the Industrial Commissioner in making wage rate determinations are irrelevant to the authority of the Comptroller to make the withholdings under section 220-b of the Labor Law and are properly the subject matter of a proceeding under CPLR article 78. (Cf. Snyder Constr. Co. v State of New York, supra.) This conclusion is well supported by policy consid *207 erations. To hold otherwise would necessarily embroil the court in the determination of collateral issues and would defeat the intent of the contract and the statute to establish finality with respect to both the subject matter of the contract and the State’s financial responsibility in connection therewith. (See Brandt Corp. v City of New York, 14 NY2d 217.)
The question of whether there existed a final agreement upon which the final payment was based must also be resolved against the claimant. First, the court would note that the claims for disputed concrete overlay work were submitted to the State and expressly rejected prior to the execution of the final agreement. Although the claimant was engaged in negotiations with the State concerning this type of work, these negotiations related to contracts that were not the subject of the present claim. Hence, any suggestion by the claimant that an essential condition for the drawing of the final agreement has not been met, to wit, the presentation and consideration of all disputed items, is erroneous. Moreover, the claimant’s attempt to reserve its rights by inserting a clause in the final agreement is without legal significance. Such a reservation clause cannot be considered a part of the final agreement since, under the terms of the contract, the final agreement relates to only that portion of the work agreed to and not in dispute. Moreover, the court would note that any attempt to unilaterally modify the terms of a contract to defeat the effect of a release clause would be of no effect. (See Brandt v City of New York, supra; Buffalo Elec. Co. v State of New York, 14 NY2d 453; Ferran Concrete Co. v Facilities Dev. Corp. of State of N. Y., 61 AD2d 1061.)
Finally, no doubt exists that the claimant should have recognized that the payment tendered was intended to be final. The check stub was clearly marked as such. In addition, the subject claim implicitly acknowledged the claimant’s acceptance of final payment, since it set forth, albeit erroneously, that a statement of claim had been filed in a matter required by section 145 of the State Finance Law.
*208 In sum, no triable issue of fact is presented. The claimant has received and accepted final payment and has not taken the action necessary to avoid the release of its claim. Therefore, the claim is barred.
Accordingly, it is ordered that the State’s motion for summary judgment is granted, and the clerk of this court is directed to enter a judgment in favor of the defendant dismissing the claim herein.

. Section 109-14 of the standard specifications of January 2,1973: “acceptance of final payment. The acceptance by the Contractor, or by anyone claiming by or through him, of the final payment shall constitute and operate as a release to the State from any and all claims of any liability to the Contractor for anything theretofore done or furnished for or relating to or arising out of the work done thereunder, and for any prior *205 act, neglect, or default on the part of the State or any of its officers, agents, or employees unless the Contractor serves a detailed and verified statement of claim upon the Department of Transportation not later than 40 days after the mailing of such payment. Such statement shall specify the items and details upon which the claim will be based and any such claim will be limited to such items. Should the Contractor refuse to accept the final payment as tendered by the Comptroller, it shall constitute a waiver of any right to interest thereon.”

. Section 109-11 of the standard specifications of January 2, 1973: “final agreement. The final agreement will not be drawn and finalized until all work required under the contract has been satisfactory completed, all claims presented and all accounts for extra work and materials have been rendered, considered, and if agreed to, made a part of such final agreement. Work remaining to be accomplished under an uncompleted work agreement, shall be considered as completed work for the purpose of the final agreement.”

. See section 109-12 of the standard specifications of January 2, 1973.

. Final payment is defined in section 109-12 of the standard specifications of January 2, 1973 as follows: “final estimate. The Commissioner will approve a final estimate for final payment based on the final agreement as prepared and approved by the Regional Director, less previous payments and any and all deductions authorized to be made by the Commissioner under the contract. Payment pursuant to such final estimate less any deductions authorized to be made by the Comptroller under the *206 contract shall constitute the final payment and shall be made by the Comptroller/