■ LANCASTER DEVELOPMENT, INC., Appellant, v STATE OF NEW YORK, Respondent.—Weiss, J. Appeal from a judgment in favor of the State, entered September 14, 1987, upon a decision of the Court of Claims (Lowery, Jr., J.).

In February 1981, the State Department of Transportation (hereinafter DOT) accepted claimant's bid to reconstruct a portion of Grove-Blue Mountain Lake Road, State Routes 28N and 30, in Hamilton County. The project was completed in October 1982 and final payment issued on July 18, 1983. This action was commenced by verified claim filed August 18, 1983. Claimant's first cause of action seeks damages attributable to order-on-contract No. 1 (hereinafter OOC No. 1), by which DOT added six "undercut" areas to the project requiring additional excavation and backfill. Claimant maintained that OOC No. 1 did not fall within lump-sum contract items 619.01 (basic maintenance and protection of traffic) and 634.01 (survey and stakeout), and initially demanded $6,929.55 in compensation and $40,000 for consequential delay damage. The consequential loss demand was subsequently raised to $400,000. The second cause of action seeks loss of profits claimant ostensibly would have earned under contract item 619.15 (pavement delineation) had the State not opted to place certain temporary road markings itself. During the ensuing trial, claimant moved to amend the pleadings to conform to the proof by enhancing the damages claimed by asserting a specific claim of fraud. Ultimately, the Court of Claims denied the motion and dismissed the claim for failure to comply with State Finance Law § 145. This appeal ensued.

Initially, we find that the Court of Claims erred in dismissing the claim outright pursuant to State Finance Law § 145. This provision requires an aggrieved contractor to serve a detailed and verified statement of claim against the public entity involved within 40 days of accepting final payment; additionally, a claim founded upon such statement must be filed within six months of final payment. The statutory objective is to allow a contractor to accept final payment without waiving any contract rights, while concomitantly preserving timely notice to the State (see, Ferran Concrete Co. v Facilities

*Dev. Corp.,* 61 AD2d 1061, 1062; *see also,* mem of Dept of Transp, Apr. 30, 1970, Governor's Bill Jacket, L 1970, ch 513). As indicated, the instant claim was filed August 18, 1983. While the court rejected claimant's assertion that a statement of claim was first mailed to DOT on August 12, 1983, it is undisputed that claimant served DOT with a duplicate copy of the verified claim on August 25, 1983, within the statutory 40-day period. The court determined, however, that since the action was commenced before DOT received written notice, it was impossible for the claim to be "founded upon such statement of claim" as required by State Finance Law § 145. We recognize that this provision has been strictly construed *(see, e.g., Fosco Fabricators v State of New York,* 94 AD2d 667, 668). Nonetheless, we cannot agree that the reversed sequence of events here described mandates a dismissal. The statute does not dictate that service of a statement of claim actually precede the commencement of the claim. What the statute does require is that the public entity involved receive timely notice *(see, Pinto Equip. Rental v State of New York,* 134 AD2d 905). Unquestionably, both service on DOT and the filing of the claim were achieved within 40 days of final payment. The fact that claimant served DOT with a verified claim and not a "detailed and verified statement of claim" does not vitiate service, for the documents may properly be considered interchangeable for notice purposes. Accordingly, we find that the claim was timely preserved pursuant to State Finance Law § 145.

We also find that the Court of Claims properly denied claimant's trial motion to add a new cause of action for fraud.* This claim centers on OOC No. 1 which was issued in May 1981 and, as indicated, added six undercut areas to the project. Essentially, claimant maintains that the State knew, in advance, that this undercut work was necessary to complete the project, but fraudulently withheld the information

---

* We recognize that State Finance Law § 145 limits the claim to the specific items listed in the statement of claim, a restriction properly interpreted as precluding any subsequent amendments arising out of the contract *(see, Kembridge Corp. v State of New York,* 101 Misc 2d 904, 907-908). We do not, however, interpret this provision or the contractual release clause as precluding an amendment premised on fraud in the inducement of the contract, such as claimant posits here *(see, Sabo v Delman,* 3 NY2d 155). To hold otherwise would effectively authorize the State "to perpetrate a fraud with immunity" *(supra,* at 161; *see, Jackson v State of New York,* 210 App Div 115, 119-120, *affd* 241 NY 563; 60 NY Jur 2d, Fraud and Deceit, § 222, at 762). Thus, the court's reliance on *Kembridge Corp.* in denying the instant application was misplaced.

prior to accepting claimant's reduced contract bid. This allegation is premised on an August 12, 1980 memorandum from Roland Gage, a construction engineer with DOT, to the regional design engineer indicating that nine areas at the project site would necessitate undercut work. Four of these areas were subsequently included in OOC No. 1. Significantly, claimant maintains that it did not discover this ostensible fraud until the Gage memo was produced at trial and thus presented its fraud claim within 90 days of discovery (see, Court of Claims Act § 10 [3-b]). We agree, however, with the court's assessment that claimant could readily have discerned the alleged fraud upon issuance of OOC No. 1 and thus failed to timely present the claim (see, Waters of Saratoga Springs v State of New York, 116 AD2d 875, 877-878, affd 68 NY2d 777). Notably, a May 19, 1981 Gage memo was attached to OOC No. 1 stating that numerous field trips were made during the winter of 1980-1981 to observe any frost heave areas at the project site. Moreover, before the first Gage memo surfaced at trial, claimant's attorney represented that proof existed of the State's advance knowledge. Given this scenario, the court properly deemed the motion untimely.

The question remains whether claimant established a basis for recovery. Having dismissed the claim as untimely, the Court of Claims did not make any relevant findings of fact or conclusions of law as to whether claimant sustained any damages. This court is authorized to render judgment as warranted by the facts (see, Northern Westchester Professional Park Assocs. v Town of Bedford, 60 NY2d 492, 499). Nonetheless, several pertinent questions of credibility have been presented, particularly with respect to whether OOC No. 1 constituted a qualitative change in the nature of the work or a mere quantitative change (see, Depot Constr. Corp. v State of New York, 23 AD2d 707, 709, affd 19 NY2d 109; see also, John Arborio, Inc. v State of New York, 41 Misc 2d 145, 147). Moreover, the trial exhibits have not been included in the record before us. Accordingly, we opt to remit the matter for further review by the Court of Claims (see, Matter of Commissioner of Social Servs. of County of Erie v Richardson, 112 AD2d 760, 761).

Judgment modified, on the law, without costs, by reversing so much thereof as dismissed the claim; matter remitted to the Court of Claims for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed. Mahoney, P. J., Kane, Casey, Weiss and Yesawich, Jr., JJ., concur.