■ RITANGELA CONSTRUCTION CORP., Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 77760.)—In a claim to recover moneys allegedly due and owing under a construction contract, the claimant appeals from an order of the Court of Claims (McCabe, J.), dated July 9, 1990, which granted the defendant's motion for summary judgment dismissing the claim for failure to comply with the requirements of State Finance Law § 145.

Ordered that the order is affirmed, with costs.

The claimant Ritangela Construction Corp. contracted with the New York State Department of Transportation (hereinafter the DOT) to perform certain road construction on a State road in Orange County. Pursuant to the contract the claimant was to provide various materials, including 1,060 tons of Item Number 608.02 asphalt to be paid for at a rate of $85 per ton. Through amendments to the contract, the claimant allegedly provided an additional 1,853 tons of Item Number 608.02 asphalt. The claimant alleges, however, that of the total 2,913 tons of Item Number 608.02 asphalt, the State only paid for 1,501 tons at the correct $85-per-ton rate, and that the re-

maining 1,412 tons of Item Number 608.02 asphalt were erroneously classified by the State as Item Number 403.13 asphalt for which the claimant was paid at a rate of $41 per ton. Thus, the contractor claims that it was underpaid for 1,412 tons of asphalt, and is owed $62,128.

Performance of the contract was completed on or about October 16, 1987. By letter dated June 7, 1988, the claimant returned to the DOT an executed final agreement for the contract, settling the conceded amounts still outstanding. In its cover letter, the claimant indicated that it had executed the agreement in the form tendered by the DOT, but that the claimant was reiterating its previously stated objections that the State had "misclassified 1412 tons of Item 608.02 Asphalt Concrete Driveways, as Item 403.13 Asphalt Concrete Type 3 Binder Course". The letter concluded: "We shall pursue our right to be paid properly for such work. In the meantime, we return your Final Agreement in order that we may be paid that portion of what we are owed". By checks dated July 19, 1988, and July 25, 1988, the claimant was paid $207,559.13 and $2,109.14 respectively, constituting final payments on the contract, the total value of which exceeded $4,900,000. These checks were mailed on the dates they were issued. The claimant deposited these checks. By verified claim and supplemental statement of claim both served October 20, 1988, 87 days after payment, the instant claim was interposed, seeking to recover the alleged $62,128 underpayment. On the State's subsequent motion for summary judgment, the Court of Claims dismissed the claim for failure to comply with the requirements of State Finance Law § 145. We now affirm.

In pertinent part, State Finance Law § 145 provides: "No provision contained in a construction contract awarded by any state department or agency shall bar the commencement of an action for breach of contract on the sole ground of the contractor's acceptance of final payment under such contract *provided that a detailed and verified statement of claim is served upon the public body concerned not later than forty days after the mailing of such final payment.* The statement shall specify the items upon which the claim will be based and any such claim shall be limited to such items. Any provision of subdivision four, section ten of the court of claims act to the contrary notwithstanding, an action founded upon such statement of claim shall be filed within six months after the mailing of the final payment" (emphasis supplied).

The purpose of this section is to enable contractors to be paid for work conceded to have been done without waiving

their claims for additional compensation allegedly owed under a contract *(see, Lancaster Dev. v State of New York,* 148 AD2d 892). The six-month period following the mailing of final payment in which a claim must be filed is a Statute of Limitations *(see, Yonkers Contr. Co. v State of New York,* 74 NY2d 682, *revg* 142 AD2d 518, 520, *on dissenting opn of Sandler, J.; Strain & Son v State of New York,* 57 AD2d 211). A detailed verified statement of claim must be served within 40 days after the mailing of final payment or the claim will be barred *(Snyder Constr. Co. v State of New York,* 53 NY2d 613, *revg* 73 AD2d 50, 52-55, *on dissenting opn of Herlihy, J.; Eastern Rock Prods. v State of New York,* 112 Misc 2d 204, *affd* 90 AD2d 691). Since the State has waived its sovereign immunity by permitting such claims, the requirement that the claimant timely file a verified statement of claim, which is a condition precedent set forth in State Finance Law § 145, is to be strictly construed *(Snyder Constr. Co. v State of New York, supra; Fosco Fabricators v State of New York,* 94 AD2d 667, 668; *Ferran Concrete Co. v Facilities Dev. Corp.,* 61 AD2d 1061).

In the instant case, the letter mailed by the claimant on June 7, 1988, was sufficiently detailed to apprise the State of the essential facts of the claim. That it was mailed prior to final payment is of no consequence *(see, Pinto Equip. Rental v State of New York,* 134 AD2d 905). However, even assuming that the claimant's June 7, 1988, letter in all other respects satisfied the requirements of State Finance Law § 145, it was not verified as is required by the plain meaning of the statute and by section 109-14 of the parties' contract. Since the claimant did not provide the required verified statement of claim, the Court of Claims correctly awarded the State summary judgment *(see, Ferran Concrete Co. v Facilities Dev. Corp., supra).*

Furthermore, we reject the claimant's contention that the State waived the requirement that the statement of claim be verified. The failure to promptly object to the service of an unverified pleading where such pleading should have been verified will constitute a waiver of such an objection *(see,* CPLR 3022; *Matter of Giambra v Commissioner of Motor Vehicles of State of N. Y.,* 46 NY2d 743, 745; *Schachter v Quinones,* 140 AD2d 505; *Meredith v Hartford Ins. Co.,* 99 AD2d 483). We note that the Court of Claims has, in a personal injury context, applied this rule to excuse the service of an unverified notice of intention to serve a claim *(see, Walker v State of New York,* NYLJ, Aug. 6, 1990, at 21, col 1).

However, under the circumstances of this case, that result would be inappropriate. The claimant's June 7, 1988, letter, although sufficient in substance to constitute a statement of claim, was not denominated as such. The letter was served well prior to the commencement of litigation and it would be unreasonable to conclude that the State voluntarily and intentionally relinquished its known right to insist upon the service of a verified statement of claim, merely because it failed to object to the absence of a verification from what appeared to be an otherwise ordinary business letter.

We have reviewed the claimant's remaining contentions and find them to be without merit. Thompson, J. P., Rosenblatt, Miller and O'Brien, JJ., concur.